[Civil No. 479.   Filed January 23, 1896.]

[43 Pac. 527.]

FEREMAN SALCIDO, Defendant and Appellant, v. CHARLES B. GENUNG, Plaintiff and Appellee.

1. EJECTMENT—RIGHT TO MAINTAIN—EVIDENCE OF TRANSFER OF TITLE BY PLAINTIFF BEFORE SUIT FILED.—Where the evidence of plaintiff in an action of ejectment discloses that he had sold the property several months before suit was filed, and there is no evidence of a retransfer to or of present right of possession in plaintiff, judgment should be entered for defendant.

APPEAL from a judgment of the District Court of the Third Judicial District in and for the County of Maricopa. A. C. Baker, Judge. Reversed.

The facts are stated in the opinion.

Millay & Bennett, for Appellant.

Fitch & Campbell, for Appellee.

BETHUNE, J.—This is an action of ejectment for the possession of the northeast one fourth of section sixteen, town-

ship one north, range two east, Gila and Salt River base and meridian, Maricopa County, by appellee, Charles B. Genung, who was the plaintiff in the court below, and who alleges in his complaint that, ever since the first day of October, 1884, and long prior thereto, he and his grantors and predecessors in interest have been entitled to the possession, and until the ouster herein complained of were in the actual, peaceable, and quiet possession, and that appellee is now entitled to the possession of said land. The record shows that the land in question is a part of the lands reserved by section 1946 of the Revised Statutes of the United States for the purpose of being applied to schools in this territory, and in the state to be erected out of it; that Genung went upon the land in 1885, having ''bought the piece from the man who had it,'' cleared off about eighty acres, fenced it, and subdivided it, and planted it in grain, and built a house upon it, costing in the neighborhood of two thousand dollars, and lived there with his family; had all but twenty acres of the land fenced and under cultivation. In the fall of 1889 or 1890 the house burned, and appellee lived on the place in tents until April following, when he put Salcido (appellant here) upon the land, and moved to People's Valley, in Yavapai County, with his family, and has resided there ever since. Quoting the language of appellee, as it appears further on in the transcript: ''I put Salcido on the ranch with the understanding that I wanted to sell the ranch. Our agreement was that he was to stay on the ranch until I sold it, and he was to have all he could make off the ranch. I had a big crop of alfalfa there, and eighteen or twenty horses; and I reserved the privilege of keeping the horses there, and a few head of steers, until I sold it, and I gave him the use of the place for taking care of it; and I made this further agreement with him, that if he bought water and raised a crop, and if I sold the place while he had a crop growing upon it, if he had to get off, I agreed to pay him a reasonable remuneration for the expense that he had been put to. He went on the ranch in pursuance of these agreements. . . . I cannot remember when was the first time I ever heard of his making any adverse claim to it, or claiming it for himself; but I sold the place and gave Mr. Goldman an order for it, and he went and presented the order, and Salcido ignored it. That was a little

more than a year ago. I think it was some time in 1894, and this is the first time that I had notice of any assertion of title in Salcido." And, further on, on cross-examination: "I have had no cattle or stock on that place since the fall of the year I left there. I have not had anything off the place since then. I have not done anything on the place since then." Jensen, a witness for appellee, testified that he had a power of attorney from appellee to sell the place, and had two conversations with appellant in reference to selling the place,—one conversation about four years before the trial, in which Salcido said Jensen could dispose of the place at any time, that he (Salcido) had no lien upon it, that Mr. Genung was a friend of his, and that a ranch would not stand between him and a friend at any time; and the other conversation, about two years before the trial, in which Salcido said: "If the buyer [seller?] was willing to give possession, he was." This is all the material evidence on the part of appellee, and is not contradicted by appellant in any material point, except that he did not go upon the land as a tenant of Genung, or under the agreement as testified to by Genung, but went there as an employee at one dollar and fifty cents per day for every day that he should be on the place; that Genung had never paid him anything for taking care of the place, and that for the last three years he (Salcido) had kept the place for himself; that before that time he had asked Genung for pay, but since then had not done so, but claimed the place for himself. It was admitted that the improvements on the place were assessed for the years 1890 and 1891 to Genung, and sold in the years 1891 and 1892 for taxes to the territory, and were not redeemed, and a deed made thereof to the territory.

Without considering at length the questions involved in the fact that the land in controversy is school land, or any other kind of public land, to which propositions appellant has directed the strength of his argument, we do not perceive how Genung could have any standing as a party to this action, after he had given his testimony at the trial. He swore that he had sold the land in question to Mr. Goldman a little more than a year before the trial, and several months before beginning this action; and the record nowhere discloses the fact of a retransfer of the property to him, or that any right to

its possession was in him at any time after his transfer to Goldman. "The privity of estate upon which the plaintiff relies for a recovery is destroyed by showing that he has conveyed his estate, or that it has been extinguished in any other mode." *Holden* v. *Andrews*, 38 Cal. 119. We think this fact is decisive of the case, and that judgment should have been rendered for defendant upon the evidence adduced at the trial by the appellee or plaintiff. The judgment of the lower court is reversed, and the case remanded, with direction to the lower court to enter judgment for the defendant, with his costs.

Rouse, J., concurs.

HAWKINS, J.—I concur in the reversal.